United States District Court
Southern District of Texas
**ENTERED**
December 27, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHELE TAYLOR, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-17-1522 |
| | § | |
| TEXAS SOUTHERN UNIVERSITY, | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending in this case that has been referred to the Magistrate Judge is Defendant's Motion for Summary Judgment (Document No. 21). Having considered the motion, the response in opposition, the summary judgment evidence and objections thereto, Defendant's Reply, the applicable law, and the prior lawsuit between Plaintiff and Defendant, Civil Action No. H-13-2708, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment be GRANTED.

### I.    Background and Procedural History

Plaintiff Michelle Taylor ("Taylor"), an African American female and a long-time employee of Defendant Texas Southern University ("TSU"), filed this lawsuit in May 2017, alleging that she was discriminated and retaliated against following the completion of a prior unsuccessful employment discrimination lawsuit against TSU. In this case, Taylor alleges that:

> 28.    Shortly after the trial in April 2015, [she] met with Dr. James Ward (then Provost) who promised he would request a raise for [her]. During that meeting, Ward commented negatively about the aforementioned trial implying [she] should not have brought it. To date, that request for Plaintiff has not been made.

> 29. In early September of 2015 Plaintiff was passed over for the position of associate dean of the Graduate School. Plaintiff learned after the position was filled that it was given to a non-black male.
>
> 30. Plaintiff at all times relevant hereto was qualified for the position and performed the duties of the associate dean for many years. In retaliation, Plaintiff was not given the opportunity to apply for the position.
>
> 31. Since the time of the trial Plaintiff's job duties have been reduced in retaliation.
>
> 32. These acts of retaliation are due to Plaintiff's complaints and lawsuit asserting unequal pay and unfair treatment because of her gender.
>
> 33. Dean Maddox (white male) promoted a non-black male to the associate dean position in an increased effort to force Plaintiff into retirement or out of the graduate school in retaliation due to her complaints about his wrongful acts in the previous Charge and trial asserting discrimination.

Complaint (Document No. 1) at 6. TSU has moved for summary judgment, arguing that Taylor has not and cannot establish a *prima facie* case of discrimination because she was not qualified for the position of Associate Dean about which she complains. As for the retaliation claims, TSU again argues that Taylor cannot base her retaliation claim on being passed over for the position of Associate Dean because she was not qualified for that position. TSU also argues that there is no evidence of any retaliatory motive associated with its selection for the Associate Dean position or its reduction in Taylor's job duties.

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of

2

a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

## III. Evidentiary Objections

Filed alongside her response to TSU's Motion for Summary Judgment are "Plaintiff's Objections to Defendant's Motion for Summary Judgment Evidence" (Document No. 25), in which Taylor objects to the admission and consideration of: (1) her performance evaluations from 2011-2017, which are inadmissible hearsay and lack authentication; (2) statements in the Declaration of Gregory Maddox that are hearsay; and (3) an October 2015 email that is hearsay and not properly authenticated. For the reasons set forth in TSU's response (Document No. 31), Taylor's objections are all OVERRULED. The performance evaluations are admissible as business records, FED. R. EVID. 803(6), over which Gregory Maddox is the custodian of records, as set forth in his Declaration. The complained of statements in Gregory Maddox's Declaration are based on his personal knowledge and/or are not hearsay under FED. R. EVID. 801(d)(2)(A). Finally, the October 2015, email is not hearsay under FED. R. EVID. 801(d)(2)(A).

## IV. Discussion

Taylor has asserted in her Complaint claims of race and sex discrimination, and claims of retaliation. In her response to TSU's Motion for Summary Judgment, however, Taylor focuses almost exclusively on her retaliation claim(s), which she states are based on: "(1) the denial of the associate dean position despite being qualified for the position; (2) the denial of performance evaluations and; (3) denial of a raise or increased compensation when others were given the same." Response (Document No. 26-1) at 1.[2]

---

[2] In her Complaint, Taylor alleged retaliation based on a reduction in her job duties. While TSU addressed and included that allegation of retaliation in its Motion for Summary Judgment, Taylor did not include any argument or evidence relative to that retaliation claim in

4

A.   **Discrimination Claims**

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2(a)(1). Actionable employment discrimination under Title VII can be based on disparate treatment, disparate impact, and/or a hostile work environment. *Barnes v. McHugh*, Civil Action No. 12-2491, 2013 WL 3561679 *11 (E.D. Tex. July 11, 2013) ("Courts have recognized several types of Title VII and ADEA claims. A plaintiff can assert "status-based" Title VII claims under 42 U.S.C.A. § 2000e–2(a) and (k), "retaliation" claims under 42 U.S.C.A. § 2000e–3, and "hostile work environment" claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: "disparate treatment" claims pursuant to § 2000e–2(a)(1), and "disparate impact" claims pursuant to 2000e–2(k)"). At issue in this case is disparate treatment discrimination.

For discrimination based on disparate treatment, a plaintiff must either offer direct evidence of discrimination or utilize the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th

---

her Response to the Motion for Summary Judgment. She has therefore abandoned and/or waived that claim, *see Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (a claim or issue raised in a pleading but ignored on summary judgment may be considered waived and/or abandoned), *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("failure to pursue [a] claim beyond her complaint constituted abandonment"),and TSU is, for the reasons set forth in its Motion for Summary Judgment, entitled to summary judgment on Taylor's retaliation claim premised on the alleged reduction in her job duties. *See e.g,, Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540–41 (N.D. Tex. 2018) (where plaintiff failed to pursue her Title VII retaliation claim and her state law claims when responding to defendant's motion for summary judgment, those claims were considered abandoned or waived and summary judgment for defendant on those claims was warranted).

Cir.), *cert. denied*, 519 U.S. 1029 (1996); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and must not be subject to interpretation as anything other than a reflection of bias. *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, 546 F. App'x 422, 427-28 (5th Cir. 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)).

Under the indirect method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination. A *prima facie* case of disparate treatment discrimination under Title VII requires proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999). Sex, race, and national origin are all protected classes. 42 U.S.C. § 2000e-et seq; 29 U.S.C. 623(a)(1). A plaintiff is "qualified" for a position if the "objective requirements" for the position are met. *Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). A plaintiff suffers

an adverse employment action when there is "a significant change in [the plaintiff's] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268 (5th Cir. 1998) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. at 761). A plaintiff is treated "less favorably" when the defendant gives preferential treatment to [a member outside the protected class] under 'nearly identical' circumstances." *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *see also Aguinaga v. Texas Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 331, 2004 WL 1161914 (5th Cir. 2004) (the differing treatment must be under nearly identical circumstances to satisfy the fourth element of a *prima facie* case of disparate treatment).

Once a *prima facie* case has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas,* 411 U.S. at 802. "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *Id.*; *McDonnell Douglas,* 411 U.S. at 802-803. To demonstrate a "pretext for discrimination" the plaintiff must show both that the employer's proffered reason was false, that is, not its true reason, or that the reason is "unworthy of credence". *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000); *see also Jackson*, 602 F.3d at 378-79 ("A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is

false or 'unworthy of credence.'"). A plaintiff can avoid summary judgment on a Title VII claim if, at the third step of the burden shifting analysis, the plaintiff can "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720.

Taylor suggests, but does not argue or present any evidence, that she was passed over for the Associate Dean position because of her race and sex, pointing to the fact that the person who was given the position was a non-African American male. She also admits that she is "challenged to make out a *prima facie* case of discrimination on a failure to promote claim." Response (Document No. 26-1) at 8, n.3.

Taylor has, as she seems to concede, not established a *prima facie* case of discrimination based on the selection of Mahesh Vanjani for the position of Associate Dean at the Graduate school. While Taylor is certainly a member of a protected class, TSU's summary judgment evidence, which Taylor has not controverted, is that she was not qualified for the position of Associate Dean because she was not a regular, tenured faculty member. Gregory Maddox, the Dean of the Graduate School at TSU, explains this in his Declaration:

> 10. Around May 2015, Dr. James Ward was appointed as Provost, and he asked me to serve as Interim Associate Provost for Research, in addition to serving as Dean of the Graduate School. Given the additional workload, I requested that I be permitted to appoint an Interim Associate Dean for the Graduate School. Dr. Ward agreed. My initial choice for the position was Carol Lewis, an African American female who was a tenured professor with extensive experience managing grants and research projects. She declined. I then appointed Dr. Mahesh Vanjani, a tenured professor of Management and Information Systems ("MIS") in the Business School. Dr. Vanjani was also asked to serve as Associate Dean of the Business School, which strongly reflects that he was extremely well-qualified for his position. Fortunately, Dr. Vanjani opted for the position in the Graduate School.

8

> 11. The Interim Associate Dean position would have faculty administration duties, and thus requires someone to be a member of the regular tenured faculty of TSU. I did not consider Dr. Taylor for that position because she is not tenured faculty, and otherwise would not be qualified for the position in light of her consistently poor job performance.

Declaration of Gregory Maddox at 2-3 (Document No. 21-1 at 91-92). While Taylor maintains that the Associate Dean position was not posted, and therefore she is unable to determine whether or not she was qualified for the position, she has come forth with no summary judgment evidence to controvert the contents of Gregory Maddox's Declaration. In particular, there is no summary judgment evidence to controvert Maddox's statements that the Associate Dean position had "faculty administration duties," and that the position had to be filled with a member of the regular tenured faculty of TSU, which Taylor was not. *See* Taylor Deposition at 76 (Document No. 21-1 at 21) ("Q: And just to clarify are you a regular faculty member? A: I'm adjunct faculty right now. Q: I see. So adjunct is different from regular faculty, right? A: Yes."). Because there is no summary judgment evidence in the record that Taylor was qualified for the position of Associate Dean, Taylor has not established a *prima facie* case of disparate treatment discrimination, and summary judgment for TSU on that claim is warranted.

### B. Retaliation Claims

For retaliation claims under Title VII, a plaintiff must first establish a *prima facie* case with proof that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title

VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is not the same as what constitutes an adverse employment action for purposes of a disparate treatment claim. In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the United States Supreme Court made it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions, but instead encompasses actions taken by an employer that are harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. Thus, what constitutes an adverse employment action for purposes of a retaliation claim is highly dependent upon the context and circumstances at issue. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *see also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g., Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of retaliation). At the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment decision. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 427 (5th Cir. 2017), *reh'g denied* (Apr. 27, 2017). If the defendant carries this burden, "the burden shifts back to the employee to 'demonstrate that the employer's [stated] reason is actually a pretext for retaliation.'" *Id.* To demonstrate pretext and avoid summary judgment at that stage, a plaintiff "must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015); *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999) ("To carry her ultimate Title VII burden, an employee must also show that her employer would not have taken the adverse employment action "but for" the employee's participation in the protected activity.").

Here, TSU argues, in somewhat of a circular fashion, that Taylor has not established a *prima facie* case of retaliation because there is no summary judgment evidence that she was qualified for the Associate Dean position. TSU also argues that Taylor cannot show that its reason for giving the Associate Dean position to Mahesh Vanjani was a pretext for retaliation. As for the other alleged instances of retaliation, TSU argues that Taylor cannot show that Gregory Maddox's failure to meet with her about her performance evaluation(s) was an adverse employment action for purposes of a retaliation claim, and cannot show that similarly situated employees received a raise when she did not.

### 1. Associate Dean position

Assuming, without deciding, that Taylor could establish a *prima facie* case of retaliation vis-a-vis the Associate Dean position, the summary judgment evidence reveals a legitimate, non-retaliatory reason for its decision to give the Associate Dean position to Mahesh Vanjani. As set forth by Gregory Maddox in his Declaration, Mahesh Vanjani was qualified for the position because he was a regular, tenured faculty member, and Taylor was not. Taylor has come forth with no summary judgment evidence to show that the articulated reason is unworthy of credence or that she would have been given the Associate Dean position but for her prior lawsuit against TSU. While Taylor believes she was "qualified" for the Associate Dean position because she had been performing the duties of an "Assistant Dean" in the Graduate School for some years, she has not shown that the duties required of an Associate Dean were the same as those she performed as an Assistant Dean. In addition, Taylor has come forth with no summary judgment evidence that would call into question Maddox's statements in his Declaration that the Associate Dean position had to be filled by a regular, tenured faculty member, which Taylor admittedly was not. Because there is no "conflict in substantial evidence' on whether Taylor was qualified for the Associate Dean position or whether Taylor would have been considered for the Associate Dean position but for her prior lawsuit against TSU, TSU is entitled to summary judgment on this retaliation claim.

### 2. Performance Evaluations

In her response to TSU's Motion for Summary Judgment, Taylor articulates her retaliation claim relative to her performance evaluations as follows: "When on multiple occasion[s], Dean Maddox refused after the prior lawsuit to conduct an evaluation of Plaintiff's performance in violation of policy and procedure." Response (Document No. 26-1) at 10. But, contrary to the

inference that could be drawn from Taylor's argument, the summary judgment evidence shows that Taylor was given yearly performance evaluations. *See* Employee Evaluation Summary for 2011, 2012, 2013, 2015, 2016, and 2017 (Document No. 21-1 at 60-89). What Taylor appears to complain about is that Gregory Maddox did not personally meet with her to discuss her performance prior to the evaluation being completed. That happened, as Gregory Maddox admitted at his deposition, in 2016 and 2017. Maddox Deposition at 50-51 (Document No. 26-2 at 11-12).

Maddox's failure to personally meet with Taylor prior to the 2016 and 2017 evaluations does not rise to the level of an adverse employment action for purposes of a *prima facie* case of retaliation. The summary judgment evidence shows that Taylor's performance evaluations were generally poor, both before an after she filed and participated in her first lawsuit against TSU. Whether or not Maddox met with her personally prior to the evaluations being completed in 2016 and 2017 cannot be viewed as sufficiently harmful that it "might have dissuaded a reasonable worker from" engaging in protected activity. TSU is therefore entitled to summary judgment on this retaliation claim.

### 3. Salary/Raise

Taylor maintains that she was not given a raise after she filed and participated in her first lawsuit against TSU. That denial of a raise, when others in the Graduate School (Carol Mitchell and Cheymere Robinson) were given raises, was, according to Taylor, in retaliation for the first lawsuit.

Again, assuming without deciding that Taylor could establish a *prima facie* case of retaliation via-a-vis her claim that she was denied a raise, TSU has come forth with legitimate, non-retaliatory reasons for the increased salaries of Carol Mitchell and Cheymere Robinson. Gregory Maddox states in his Supplemental Declaration as follows:

13

3.      Carol Mitchell is employed as a college budget officer in the Graduate School at TSU. Ms. Mitchell also serves as the Assistant Director for Study Abroad at TSU. Ms. Mitchell's total pay increased between Fiscal Year 2014-2015 and Fiscal Year 2015-2016, because she went through the Job Analysis Questionnaire ("JAQ") process with Human Resources, which redefined her position on the basis of the tasks she actually performed.

4.      Cheymere Robinson was formerly employed as an admissions counselor in the Graduate School at TSU. Ms. Robinson's pay increased between Fiscal Year 2014-2015 and Fiscal Year 2015-2016, because she assumed additional duties related to accreditation.

5.      Aside from (1) increased pay for increased job duties and (2) University action affecting all TSU employees (including Dr. Michele Taylor), no one in the Graduate School has received a regular salary raise during the past three years.

(Document No. 32-1). Nothing in the summary judgment evidence raises any question about the verity of this reason and explanation, suggests that retaliation against Taylor is the true reason Carole Mitchell and Cheymere Robinson received salary increases when she did not, or presents a conflict in substantial evidence that Taylor would have received a raise but for her prior lawsuit against TSU. TSU is, accordingly, also entitled to summary judgment on this retaliation claim.

## V.     Conclusion and Recommendation

Based on the foregoing and the conclusion that Taylor has not raised a genuine issue of material fact on her discrimination or retaliation claims, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment (Document No. 21) be GRANTED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order

80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 26th day of December, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE